UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――

PSYCHE B.,

              Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

―――――――――――――――――――――――――

**DECISION AND ORDER**

20-CV-6745S

1.      Plaintiff Psyche B.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

2.      Plaintiff protectively filed her applications with the Social Security Administration on June 21, 2018.  Plaintiff alleged disability beginning November 20, 2016, later amended to January 2, 2018, due to fibromyalgia, osteoarthritis, and thyroid disorder.  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

3.      On January 8, 2020, ALJ Brian LeCours held a teleconference hearing at which Plaintiff—represented by counsel—and Vocational Expert Melissa Fass-Karlin

―――――――――――――――――

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

appeared and testified. (R.[2] at 30-62, 15.) At the time of the hearing, Plaintiff was 44 years old with a high school education (R. at 26). She had a relevant work as an account clerk and has not work since the amended onset date of Jan. 2, 2018 (R. at 25, 17).

4.     The ALJ considered the case *de novo* and, on January 29, 2020, issued a written decision denying Plaintiff's applications for benefits. After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3] (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 14, 17.) Plaintiff then filed a "Notice of No Reply" (Docket No. 18), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion is **denied**, and Defendant's Motion is **granted**.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's January 29, 2020, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.      The five-step process is as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not,

3

the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.   See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the amended onset date of January 2, 2018.  (R. at 17.)  At Step Two, the

ALJ found that Plaintiff has the following severe impairments:  fibromyalgia, osteoarthritis, and thyroid disorder.  Id. at 18.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 18-21.

12.    Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work, except Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ramps, ladder, ropes, or scaffolds.  (R. at 22.)

13.    At Step Four, the ALJ found Plaintiff could perform her past relevant work as an accountant clerk.  (R. at 25.)  In addition to this work and given her additional limitations, the ALJ found that Plaintiff's ability to perform medium work was impeded by those limitations.  The ALJ then posed hypotheticals to the vocational expert of a claimant with Plaintiff's age, education, and work experience.  The expert opined that this hypothetical claimant could work such occupations as cleaner II (medium exertion work), kitchen helper (medium work), cleaner, housekeeping (light work), routing clerk (light work), document preparer (sedentary work), and cutter and paster (sedentary work).  (R. at 26.)  At Step Five, the ALJ concluded that Plaintiff is not disabled.  (R. at 27.)

14.    Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate her fibromyalgia and consider it with related and other conditions.  Next, she contends that the RFC is unsupported and thus frustrates judicial review.  She faults the ALJ for rejecting opinions of treating providers and instead improperly used his lay opinion.  For the reasons that follow, this argument is unavailing.

15.     Under the Social Security standards applicable for applications after March 2017 for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The agency considers the supportability and consistency of the opinions as the most important factors, id. §§ 404.1520c(c)(1), (2), (b)(2), 416.920c(c)(1), (2), (b)(2).  The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021)(Carter, Mag. J.) (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion will be, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

16.     Symptoms of fibromyalgia include pain, tenderness, and stiffness in joints, capsules, and adjacent structures, with systemic symptoms including fatigue, insomnia, and depression, Taber's Cyclopedic Medical Dictionary 670 (16th Ill. Ed. 1989).

17.     Pursuant to SSR 12-2p, to diagnose fibromyalgia there must be at least eleven positive tender points on physical examination, with positive tender points found bilaterally and above and below the waist.  Another way to prove having fibromyalgia is a history of widespread pain, repeated manifestation of six or more symptoms (such as fatigue, cognitive problems, depression, or anxiety), and exclusion of other disorders as the cause, SSR 12-2p.

18.     Thus, to consider the severity of fibromyalgia, the ALJ required consideration of objective medical evidence.  This contrasts with Plaintiff's contention that

the ALJ erred in overreliance upon objective medical evidence in finding persuasive the medical opinion of Dr. R. Abueg (R. 65, 70-71, 74, 79-80, 24-25; cf. Docket No. 14, Pl. Memo. at 6, 18).

19.     Plaintiff complains that the ALJ failed to improperly evaluate her fibromyalgia and improperly discounted the more restrictive findings of Dr. Amanda Morrison (Docket No. 14, Pl. Memo. at 15-20, 10-13).   Dr. Morrison treated Plaintiff for fibromyalgia from August 2018 to October 2019 (R. at 366-421; 404-06, 393).   On November 2, 2018, Dr. Morrison treated Plaintiff and Plaintiff stated that "it was a long year" regarding the fibromyalgia but she felt like resuming work (clerical or secretarial work) to see how she would respond (R. at 404; Docket No. 14, Pl. Memo. at 11 & n.12). Dr. Morrison assessed the medication for her fibromyalgia was working well (R. at 406). Prior to her appointment with the doctor on February 13, 2019, Plaintiff had an unexplained flareup of her fibromyalgia (R. at 392-93).   Dr. Morrison suspected an infection and increased activity caused this flare (R. at 393).

20.     The ALJ also noted that treatment notes observed that Plaintiff's fibromyalgia pain was tolerable (R. 23, 278 (Dr. Zoe Gravitz, Feb. 5, 2018); see Docket No. 14, Pl. Memo. at 7), that despite some tenderness or trigger points, "she generally appeared in no distress" (R. at 23-24, 367, 371, 375, 405, 410, 416).

21.     There is substantial evidence in this record, however, to support the ALJ's finding concerning Plaintiff's fibromyalgia, including the findings of consultative examiner, Dr. R. Abueg (R. 70-71, 79-80, 24-25).   The record shows that Plaintiff's fibromyalgia is under control with medication, adjusted as flares occurred (R. at 406, 393, 367, 371, 375, 405, 410, 416).

22.     Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) on the ALJ's consideration of her fibromyalgia is denied.

23.     Plaintiff next argues that the RFC does not account for the episodic effects of her flares of pain, fatigue, depression, anxiety, and headaches (Docket No. 14, Pl. Memo. at 25-30).

24.     Defendant disagrees, finding that the ALJ considered these conditions in deciding her fibromyalgia to be a severe impairment at Step Two but not equaling Listing requirements at Step Three (Docket No. 17, Def. Memo. at 10; R. at 18, 21).

25.     Further, Defendant notes that the vocational expert identified sedentary work someone like Plaintiff could perform, thus the ALJ properly concluded that Plaintiff was not disabled if a more restrictive RFC was found (Docket No. 17, Def. Memo. at 11 n.11; see R. at 22, 26-27).  The ALJ also compared Plaintiff's RFC with her past relevant work as an accounting clerk (sedentary work) and concluded she should resume her past relevant work (R. at 25).

26.     Defendant cites examples of Plaintiff's examinations by her treating sources which did not note fibromyalgia or effects of pain flares (Docket No. 17, Def. Memo. at 11-12, citing, e.g., R. at 281, 275-76, 23).  Her treatment records showed that Plaintiff remained independent in her activities despite her symptoms (Docket No. 17, Def. Memo. at 13, citing R. at 23, 318, 423, 459).

27.     There is substantial evidence for the ALJ to find that Plaintiff could perform medium work.  Plaintiff's Motion for Judgment (Docket No. 14) on this ground is denied.

28.     Plaintiff next objects that the ALJ relied upon his lay opinion rather than the opinions of Plaintiff's treating sources (Docket No. 14, Pl. Memo. at 19).  She also argues

that the ALJ did not rely upon a useful medical opinion in reaching the physical RFC, thus not closing gaps in the record (id. at 20-25).

29.     Citing Second Circuit precedent, Defendant responds that the ALJ need not rely upon a medical source opinion, Monroe v. Comm'r, 676 F. App'x 5, 7-9 (2d Cir. 2017) (summary Order); see Corbiere v. Berryhill, 760 F. App'x 54, 57 (2d Cir. 2019) (summary Order) (Docket No. 17, Def. Memo. at 21-22).  Defendant recognized that the ALJ has discretion to consider relevant medical and other evidence, see Tiffany L. v. Comm'r, No. 20CV677, 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021) (Carter, Mag. J.) (citing cases) (id. at 22).  With the voluminous record, Defendant argues there are no gaps therein (id. at 23).  Defendant thus concludes that the ALJ properly evaluated the evidence in Plaintiff's record and opinions in finding that Plaintiff could perform medium exertion work is supported by substantial evidence (id.).

30.     The ALJ did not rest upon his lay opinion in making his findings.  He considered the medical evidence and other evidence as well as medical opinions (R. at 22).  Under the post-March 2017 Social Security regulations, the ALJ considers medical opinions of record but the ALJ need not defer or give any specific evidentiary weight to any medical opinion, 20 C.F.R. § 416.920c(a).  Again, the ALJ need not articulate how an opinion is considered, 20 C.F.R. § 416.920c(b)(1).  The ALJ considers these opinions when provided, id. § 416.920c(a), but the ALJ is not "obligated" to any opinion (but cf. Docket No. 14, Pl. Memo. at 21).  The ALJ also is not obligated to seek an opinion that has not been included in the record, see Monroe, supra, 676 F. App'x at 8; Tankisi v. Comm'r, 521 F. App'x 29, 34 (2d Cir. 2013) (summary Order); Ronald B. v. Comm'r, No. 20CV904, 2021 WL 5745673, at *6 (W.D.N.Y. Dec. 2, 2021) (Carter, Mag. J.); Daniel

M. v. Comm'r, No. 19CV1282, 2021 WL 958451, at *3 (W.D.N.Y. Mar. 15, 2021) (Carter, Mag. J.).

31.    Where, as in this record, there are no obvious gaps in the record and the ALJ has the complete medical history, the ALJ has no obligation to seek additional information, Rosa v. Callahan 168 F.3d 72, 79 n.5 (2d Cir. 1999).

32.    Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        July 21, 2022
              Buffalo, New York


                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge